IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK CUMMINGS, | CASE NO. CV-F-03-5294-DLB |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR NEW TRIAL |
| vs. | |
| DERRAL ADAMS, et al., | |
| Defendants. / | |

**I.
INTRODUCTION**

Plaintiff is a state prisoner proceeding pro se and with a civil rights action pursuant to 42 U.S.C. section 1983. This action proceeded to trial on plaintiff's claims against defendants Hegge and Ruff for deliberate indifference to serious medical needs in violation of the Eighth Amendment and against defendant Villalobos for retaliation in violation of the First Amendment. Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a September 7, 2005 order, this action was assigned to United States Magistrate Judge Dennis L. Beck for all further proceedings. Document No. 107. Following a jury trial, on November 9, 2005, judgment was entered in favor of defendants and against plaintiff pursuant to the jury verdict rendered on November 4, 2005. Document No. 155. On November 16, 2005, plaintiff filed a Notice of Appeal. Document No. 158. On November 14, 2005 and December

1

1  2, 2005, plaintiff filed motions for a new trial. Document Nos. 156, 165. In a December 21, 2005

2  Order, the Court advised plaintiff that because plaintiff had filed a notice of appeal, the Court was

3  without jurisdiction to rule on plaintiff's motions for a new trial. *See* Griggs v. Provident Consumer

4  Discount Co. 459 U.S. 56, 58 (1982); Stein v. Wood, 127 F.3d 1187, 1189 (9th Cir. 1997).

5  　　　　On December 27, 2005, the Court of Appeal issued an Order holding the appeal in abeyance

6  pending this Court's resolution of plaintiff's motion for a new trial. Document No. 179. Defendants

7  have not filed an opposition to plaintiff's motion for a new trial or to the Court of Appeal's Order.

8  Accordingly, this Court now issues its ruling and for the reasons discussed below, DENIES

9  plaintiffs' motion for a new trial.

10  **DISCUSSION**

11  　　　　F.R.Civ.P. 59(a) authorizes granting a new trial and provides in pertinent part:

12  　　　　　　A new trial may be granted . . . on all or part of the issues (1) in an action in
which there has been a trial by jury, for any of the reasons for which new trials have
13  　　　　　　heretofore been granted in actions at law in the courts of the United States . . .

14  　　　　The Ninth Circuit has held that a new trial may be granted if "the verdict is contrary to the

15  clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound

16  discretion of the trial court, a miscarriage of justice." Silver Sage Partners, Ltd. v. City of Desert Hot

17  Springs, 251 F.3d 814, 819 (9th Cir. 2001). A District Court may not grant a new trial simply

18  because it would have arrived at a different verdict. *Id.* "[W]hen an appellate court ponders the

19  probable effect of an error on a civil trial, it need only find that the jury's verdict is more probably

20  than not untainted by the error." Abromson v. American Pacific Corp., 114 F.3d 898, 903 (9th Cir.

21  1997), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1040 (1998) (quoting Haddad v. Lockheed Calif.

22  Corp., 720 F.2d 1454, 1459 (9th Cir. 1983)).

23  　　　　Plaintiff moves for a new trial on the following grounds: (1) that certain statements made by

24  jurors after the verdict was rendered require the Court to grant a new trial to prevent a miscarriage of

25  justice; (2) the Court improperly denied plaintiff's request for transportation of four additional

26  incarcerated witnesses; and (3) the Court improperly denied his requests for impeachment evidence

27  and discovery by defendants.

28  ///

A.   **Jurors' Post-Verdict Statements**

Plaintff argues that statements made by jurors after the verdict establish that there was false testimony offered by the defendants and therefore, in fairness and to prevent a miscarriage of justice, the Court should grant a new trial. The Court rejects plaintiff's argument. Plaintiff has submitted no evidence to support his allegation and the Court finds no basis for questioning the unanimous verdict rendered by the jury, either from the jurors' statements or otherwise.

After the verdict was rendered and the jurors were excused, three (3) jurors voluntarily stayed behind to talk to the parties. The undersigned was present and heard the statements made by the jurors. The statements were not inconsistent with the verdict and gave this Court no reason to believe there was any misconduct, or any basis to question the fairness of the proceedings. The statements reflected the jurors' concern with the prison health care system in general and were not contrary to their verdict in favor of defendants.

Moreover, Federal Rule of Evidence 606(b) prevents jurors from testifying as to any matter or statement occurring during their deliberations or the effect of anything on their mental processes. This includes testimony, affidavits and evidence of any statement made by the juror when offered for the purpose of impeaching the verdict. Accordingly, plaintiff's attempt to use juror statements to impeach the verdict in this case is improper.

Plaintiff has failed to demonstrate any abnormality in the proceedings and he certainly has failed to make a showing necessitating a new trial.

B.   **Denial of Witnesses**

Plaintiff also argues this Court improperly denied his motion for the attendance of four (4) additional incarcerated witnesses, Matthew Feldmeth, Donald Leach, Jerry Wayne Lund and Vincent Garcia.

Witnesses who are held in state custody are beyond the reach of subpoena process under Federal Rule of Civil Procedure 45. Subpoena process, which runs only to the witness, cannot be effective. See Story v. Robinson, 689 F.2d 1176, 1179 (3d Cir. 1982). Statutes therefore grant federal courts the express authority to issue writs of habeas corpus ad testificandum for the production of state prisoners. 28 U.S.C. § 1651(a) and 28 U.S.C. §2241(c)(5); see Story v.

Robinson, supra, citing United States v. Hayman, 342 U.S. 205, 221, 72 S.Ct. 263, 273 (1952); Adams v. U.S. ex rel. McCann, 317 U.S. 269, 274, 63 S.Ct. 236, 239.  Such process runs to the custodian, and there is no requirement that the custodian be compensated for compliance with the writ.  Story v. Robinson, supra.

The determination whether to issue a writ of habeas corpus ad testificandum rests within the sound discretion of the district court.  Maurer v. Pitchess, 530 F. Supp. 77, 80 (C.D. Cal. 1981), rv'd in part, 755 F.2d 936 (9th Cir. 1985).  Factors to be weighed include:

> [T]he costs and inconvenience of transporting the prisoner, potential danger from the inmate's presence in court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition.

Id.; see also Wiggins v. County of Alameda, 717 F.2d 466, 468-69 (9th Cir. 1983).  The standards guiding the court's discretion are the same regardless of whether the inmate in question is the plaintiff, or a non-party witness.  See Maurer v. Pitchess, supra at 80, n. 3.  In sum, the court should conduct a cost-benefit analysis regarding whether the inmate should come to court.  See e.g., Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994).  The Court must determine not only whether the inmate witnesses' testimony is relevant, but also whether such testimony is necessary.  This determination depends ultimately upon whether the probative value of the testimony justifies the expense and security risk associated with transporting an inmate witness to court from a correctional facility.  See Atkins v. City of New York, 856 F. Supp. 755, 758 (E.D.N.Y. 1994); Muhammad v. Warden, Baltimore City Jail, 849 F.2d 107, 112 (4th Cir. 1988); Cookish v. Cunningham, 787 F.2d 1, 5 (1st Cir. 1986).

On July 13, 2005, plaintiff submitted his motion for the attendance of incarcerated witnesses as required by the Court's June 10, 2005 Second Scheduling Order.  *See* Document No. 81.  In his motion, he requested the attendance of fifteen incarcerated witnesses, including witnesses Feldmeth, Leach, Lund and Garcia.  At the Pretrial Conference held on September 2, 2005, defendants objected to the attendance of this number of incarcerated witnesses arguing the proposed testimony was cumulative and the transportation of this number of incarcerated witnesses was overly burdensome

and created numerous security concerns.

The Court determined that only six of the proposed incarcerated witnesses appeared to have relevant testimony and further that all six were expected to testify on the same issue, namely, the denial of medical care to plaintiff on April 16-18, 2001.  The Court advised plaintiff that because of the cumulative nature of the proposed testimony, in addition to the burdens and security risks associated with transporting this many incarcerated witnesses for trial, the Court would allow plaintiff to identify three of the six witnesses to have transported for trial.  Plaintiff indicated that he was having difficulty in making contact with some of the inmate witnesses who were in other institutions and defense counsel agreed to assist to the extent possible. The Court ordered plaintiff to attempt to contact his witnesses and thereafter identify three to be transported for trial.  The Court scheduled an additional telephonic trial confirmation hearing for September 27, 2005.

On September 26, 2005, plaintiff submitted revised declarations for two (2) of the incarcerated witnesses, James Ely and Michael Brambles and he requested that the Court issue writ of habeas corpus ad testificandum for these witnesses.  At the final Pretrial Conference on September 27, 2005, the Court granted plaintiff's request to issue writs for Mr. Ely and Mr. Brambles.  Due to the pending November 1, 2005 trial date, the Court set a deadline of October 14, 2005 for plaintiff to identify one additional incarcerated witness.  On September 29, 2005, the Court issued the Pretrial Order reflecting  the orders made at the conference.  *See* Document No. 124.  The Court granted the parties ten (10) days in which to file any objections to the Pretrial Order.

Plaintff subsequently submitted requests for writ of habeas corpus ad testificandum for two (2) additional inmate witnesses, Vincent Garcia and Lee Pugh.  Defendants objected to the transportation of these witnesses, arguing their proposed testimony was duplicative of the testimony of Mr. Brambles and Mr. Ely.

On October 7, 2005, plaintiff filed objections to the Pretrial Order which were unrelated to the issues which are the subject of this motion for new trial.[1]

---

[1] While plaintiff objected to the Court's failure to issue a writ of habeas corpus ad testificandum for John Hendricks, he did not object as to any other witnesses.  Plaintiff had admittedly been unable to contact Mr. Hendricks and had failed to supply a declaration from him.

5

1   On October 13, 2005, the Court granted plaintiff's request as to Mr. Pugh but denied his
2 request as to Mr. Garcia, determining that his proposed testimony was duplicative and unnecessary.
3   On October 13, 2005, plaintiff renewed his request to have incarcerated witness Hendricks
4 transported for trial, arguing that defendants had hindered his ability to make contact with this
5 witness.
6   On October 31, 2005, Plaintff filed a request that witnesses Feldmeth and Clark also be
7 transported for trial.
8   On the morning of the first day of trial, plaintiff objected to the Court's limitation of three (3)
9 incarcerated witnesses.  The Court overruled his objection on the grounds that as ordered several
10 times, plaintiff's proposed additional inmate witnesses, and specifically Feldmeth, Clark and
11 Hendricks, were prepared to give testimony on the issue of the denial of medical care, an issue upon
12 which plaintiff had four witnesses, including himself, available to testify.  The Court therefore ruled
13 that additional incarcerated witnesses on that issue were commutative.  Further, plaintiff had
14 admittedly been unable to contact Mr. Hendricks and he failed to identify Feldmeth and Clark as
15 witnesses as ordered.
16   The trial proceeded through November 4, 2005.  Plaintiff testified on his own behalf.
17 Plaintiff claimed that following an incident on April 15, 2001 where he was injured during an attack
18 by another inmate, on April 16, 17 and 18, defendants Hegge and Ruff refused to provide him
19 medical attention for his injured jaw in violation of the Eighth Amendment.  Plaintiff also claimed
20 that defendant Villalobos, in violation of his First Amendment rights, retaliated against him for filing
21 a grievance by threatening and attempting to intimidate him in an interview that Villalobos
22 conducted with plaintiff as part of an investigation into plaintiff's claims against Hegge, Ruff and
23 others.
24   Incarcerated witnesses Michael Brambles, Lee Pugh and James Ely testified for plaintiff.  As
25 expected, these witnesses all supported plaintiff's testimony that he attempted to obtain medical
26 treatment from the defendants on April 16, 17 and 18th 2001, but was denied.
27   This Court properly exercised its discretion and declined to issue writs of habeas corpus ad
28 testificandum for additional incarcerated witnesses as requested.  Based on the submissions made by

6

plaintiff regarding what the additional witnesses would offer, the additional testimony was cumulative and therefore unnecessary. In making its ruling, the Court considered the affidavits submitted by plaintiff for all of the inmates he proposed to bring to trial. The Court determined that four witnesses, including plaintiff, testifying on the issue of plaintiff's attempts to obtain medical treatment from the defendants on April 16, 17 and 18, was sufficient. The Court ordered plaintiff to identify the witnesses he wanted. When plaintiff identified more than three, the Court considered the affidavits and issued three writs of habeas corpus ad testificandum for plaintiff's witnesses. The actual testimony given by plaintiff's witnesses was consistent with their affidavits. Consequently, as the Court anticipated, additional testimony on the issue was unnecessary. The denial of transportation for witnesses Feldmeth, Leach, Lund and Garcia was not an abuse of discretion and did not affect the substantial rights of plaintiff sufficient to warrant a new trial. *See* Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995)[new trial granted where ruling "substantially prejudiced" moving party.]

**C.    Denial of Impeachment Evidence**

Plaintiff's motion for a new trial on the grounds that the Court denied him "valuable impeachment evidence against the defendants" and "relevant discovery by defendants" is also without merit. At the September 1, 2005 pretrial conference, the court denied plaintiff's motions to compel belated discovery requests. However, the Court also ordered and defendants agreed to provide, much of the requested information to plaintiff and it was agreed that plaintiff's complete medical file would be provided and admissible at trial. *See* Document No. 107.[2] The Court's denial of plaintiff's attempts to use the trial process to conduct discovery well after the discovery cutoff and in violation of the Federal Rules of Civil Procedure, is not grounds for the granting of a new trial.

**III.
CONCLUSION**

Plaintiff has failed to demonstrate that the verdict in this case was contrary to the clear weight

---

[2] The Court also notes that at the September 27, 2005 Pretrial Conference, plaintiff stated his intention to call an unincarcerated witness whom he believed had personal knowledge of an investigation of the denial of medical care by defendants. Over defendants' objection, the Court ruled that plaintiff would be allowed to call this witness. In the Pretrial Order, the Court granted plaintiff until October 14, 2005 to submit the required fees to have the United States Marshal subpoena this witness. Plaintiff failed to do so.

1  of the evidence, based on false evidence or that a new trial is necessary to prevent a miscarriage of
2  justice.  The Court finds no irregularity in the proceedings or in the outcome of the trial.  Plaintiff's
3  motion is therefore DENIED.

5       IT IS SO ORDERED.

6       **Dated:   February 17, 2006**                    **/s/ Dennis L. Beck**
   3b142a                                              UNITED STATES MAGISTRATE JUDGE